UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| TEAMSTERS, CHAUFFEURS, WAREHOUSEMAN AND HELPERS, AND PROFESSIONAL, CLERICAL, PUBLIC AND MISCELLANEOUS EMPLOYEES, LOCAL UNION NO. 533; AND GEORGE ELY,<br><br>    Plaintiff,<br><br>    vs.<br><br>UPS GROUND FREIGHT, INC., F/K/A MOTOR CARGO, INC.,<br><br>    Defendant. | 3:06-CV-00467-ECR (RAM)<br><br>REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion to Compel Arbitration. (Doc. #1-3). Defendant opposes the motion on grounds that the motion fails to state a claim upon which relief can be granted. (Doc. #12).

BACKGROUND

Plaintiff George Ely ("Ely"), a member of the Teamsters, Chauffeurs, Warehouseman and Helpers, and Professional, Clerical, Public and Miscellaneous Employees, Local Union No. 533 ("the Union"), was employed with UPS Ground Freight ("UPS") as a driver. (Doc. #1-3, Exh. C). Ely's employment was covered by a Collective Bargaining Agreement ("CBA") between UPS and the Union. (Id.) In order to settle a grievance that the Union filed on Ely's behalf after Ely was

terminated on July 22, 2005 based on "alleged unacceptable work performance," Plaintiffs and the Union negotiated and entered into a "Settlement Agreement" ("Agreement") with UPS. (Doc. #12, Exh. A). All parties signed the agreement. (Id.). The signed Agreement states that UPS and the Union were both "represented by legal counsel in connection with negotiation and drafting of [the] agreement" and that Ely "has consulted with his union representative to the extent he believes it necessary or appropriate, and that he has executed this Agreement following such consultation." (Id.) The material terms of the Agreement provide that Ely's termination would be converted to a "final warning," that Ely would be on an unpaid suspension from July 22, 2005 until January 2, 2006, and that Ely should be reinstated to his former position on January 3, 2006. (Id.). The Agreement also provides that it is a "Last Chance Agreement" and that "during the nine (9) month period after January 3, 2006, if [Ely] engage[s] in misconduct or otherwise unacceptable performance, [UPS] may terminate him. If [UPS] terminates him, [Ely] and [the Union] shall have no right to grieve or otherwise challenge the termination, except that [Ely] may grieve whether or not he engaged in the conduct that caused his termination." (Id.) This "Last Chance Agreement" clause further provides that if the "grievance proceeds to arbitration the arbitrator's role shall be limited solely to determining whether or not [Ely] engaged in the conduct that caused his termination ... the arbitrator shall have no authority to consider the appropriateness of the penalty or otherwise modif[y UPS's] decision." (Id.).

Plaintiff Ely's employment with UPS was terminated on January 24, 2006. (Doc. #1-3). On January 27, 2006 the Union filed a grievance protesting the termination as unjust and discriminatory. (Id.) In reply, UPS responded to the Union's letter, agreeing to schedule a grievance meeting, though reserving all rights under the "Last Chance Agreement." (Doc. #1-3, Exh, D). Plaintiffs maintain that they did meet with UPS but the parties were unable to agree on a resolution of the grievance. (Doc. #1-3). Plaintiffs believe that Ely's grievance is arbitrable pursuant to the CBA and have petitioned this court to compel UPS to arbitrate the dispute. (Id.) Defendant argues that the Agreement (and Last Chance Agreement contained within it) are

2

binding on all parties, and as such, Defendant had every right to dismiss Ely after he broke some company rules.[1] (Doc. #12).

## DISCUSSION

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et. seq., which governs contractual arbitration in written contracts involving interstate or foreign commerce or maritime transactions, does not apply to this case because Plaintiff Ely falls in to the exempt category of "transportation worker." 9 U.S.C. §§ 1,2 (2006); Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001)(rejecting Ninth Circuit view that FAA excluded all employment contracts and adopting view of other circuits that the exemption in § 1 of FAA should be narrowly construed to exempt only transportation workers); see also Harden v. Roadway Package Systems, 249 F.3d 1137 (9th 2001)(FAA did not apply to plaintiff delivery driver, who was engaged in interstate commerce). However, arbitration agreements can be enforced under state law even if an employee is exempt under the FAA. See Palcko v, Airborne Express, 372 F.3d 588, 596 (3rd Cir. 2004)(cert. denied).

Under Nevada's version of the Uniform Arbitration Act (Chapter 38.219 of title 3 of the Nevada Revised Statutes), agreements to arbitrate subsequent controversies between parties are enforceable and generally irrevocable. NEV. REV. STAT. § 38.219(1) (2006). The court decides whether a controversy is subject to an agreement to arbitrate. NEV. REV. STAT. § 38.219(2) (2006). The statute provides that upon "motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement," where "the refusing party opposes the motion, the court shall proceed summarily and order the parties to arbitrate unless it finds there is no enforceable agreement to arbitrate." NEV. REV. STAT. § 38.221 (2006). The Nevada Supreme Court has made clear that "whether a dispute is arbitrable is essentially a question of construction of contract." Kindred v. Second Judicial Dist. Court, 996 P.2d 903, 907 (Nev. 2000)(quoting Clark Co. Public Employees v. Pearson, 788 P.2d 136, 137 (Nev. 1990)). In

---

[1] It is not entirely clear for what conduct Ely was terminated. However, Plaintiff's exhibit "D" suggests that the reason Ely was terminated was that he did not follow the proper procedures regarding "paperwork and pickups and deliveries." (Doc. #1-3, Exh. D).

3

construing a contract, if no ambiguity is apparent, "the words must be taken in their usual and ordinary signification, and the context interpreted in accordance with grammatical rules." McBurney v. GM Card, 869 A.2d 586, 509 (R.I. 2005) (internal citations omitted).

Here, the parties do not dispute that the CBA contains an enforceable agreement to arbitrate disputes regarding suspension or discharge. (Doc. #1-3; Doc #12; see also Doc. #1-3, Exh, A). The parties simply disagree as to what effect the Agreement and the "Last Chance Agreement" contained within have on Plaintiffs' right to arbitrate the current termination dispute. Thus, the court is called upon to consider whether the Agreement constitutes a binding document altering the rights of the parties.

The court does not find the Agreement ambiguous and thus must give its words their ordinary meaning. McBurney, 869 A.2d at 509. The material terms at issue in this dispute provide that UPS may terminate Ely for "misconduct or otherwise unacceptable performance" and that upon such termination Ely "shall have no right to grieve or otherwise challenge the termination, except that [Ely] may grieve whether or not he engaged in the conduct that caused the termination." This language unambiguously limits Ely's right to grieve his termination to a grievance regarding whether or not he engaged in the underlying conduct leading to the termination. Although the Agreement permits Ely to arbitrate the question of whether or not he engaged in the underlying conduct, it explicitly and unambiguously limits the scope of the arbitrator's role.[2] Only a tortured reading of the terms of the Agreement could lead to a construction requiring UPS to arbitrate whether Ely was terminated for cause where such termination occurs during the ninth month period following Ely's reinstatement. By signing the Agreement, Ely waived his right to dispute whether or not his termination was for just cause, (though only for the limited nine month period). In exchange, UPS agreed to reinstate Ely and

---

[2] The "arbitrator's role shall be limited solely to determining whether or not the Grievant engaged in the conduct that caused his termination. If it is determined that the Grievant engaged in the conduct that caused his termination , an arbitrator shall have no authority to consider the appropriateness of the penalty tor otherwise modifying [sic] [UPS's] decision." (Doc. #12, Exh. A).

4

give him another chance.[3] The Agreement specifically provides that UPS "would not have agreed to reinstate [Ely] without the Last Chance Agreement." (Doc. #12, Exh. A). The court is aware of no reason the Plaintiffs should not be held to the agreement they signed. The court finds that the Agreement is binding and that the current dispute is not subject to arbitration.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge enter an order <u>DENYING</u> the Motion (Doc. #1-3).

DATED: November 15, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3]Significantly, both UPS and the Union were represented by counsel at the January 4, 2006 meeting at which the Agreement was reached and Ely consulted with his union representatives. (Doc. 12, Exh. A).

5